

**ORDERED in the Southern District of Florida on October 27, 2017.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-12235-BKC-RAM |
| | ) | |
| MARK ZHUK, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MARK ZHUK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-01266-BKC-RAM-A |
| | ) | |
| ALISON BROOKE ZHUK, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ABSTENTION ORDER AND ORDER DISMISSING PROCEEDING</u>

Debtor's complaint in this proceeding seeks a judgment declaring that certain obligations he owes to his ex-wife under a

marital settlement agreement are not domestic support obligations ("DSOs"). The defendant ex-wife has filed a motion for abstention arguing that this Court should abstain and allow the state court judge to decide the issue. Based upon the history of the state court case and the Eleventh Circuit's guidance favoring deference to family court judges, the Court will abstain.

### The State Court Dissolution Case

In 2013, the Debtor, Mark Zhuk (the "Debtor"), and his ex-wife, Alison Brooke Zhuk (the "Former Wife"), entered into a marital settlement agreement ("MSA") in their state court marital dissolution case.[1] Section II of the MSA is titled "Equitable Distribution" and includes paragraph 10, which reads as follows: "The Husband shall pay the Wife the sum of five hundred and twenty thousand dollars ($520,000.00) as lump sum alimony and child support." The $520,000.00 sum was to be paid in various installments. It is undisputed that the final two installment payments in the aggregate amount of $200,000.00 are due and owing (the "Divorce Obligation").[2] The second to last installment

---

[1] Case No. 12-12603-FC-04, Circuit Court, Miami-Dade County (the "State Court Case").

[2] There is some dispute as to whether Mr. Zhuk paid Ms. Zhuk the full $320,000 due prior to the last two installment payments. *See* Transcript of February 27, 2017 Hearing ("Tr."), pp. 100-101 [DE #92 in 17-12235]; *see also* Claim 2-1 in 17-12235 (The Former Wife's proof of claim includes the $200,000.00 Divorce Obligation, *plus* prior installments in the aggregate amount of $68,333.00 that the Former Wife claims remain unpaid.).

payment was due on March 15, 2016, prior to the filing of the Debtor's bankruptcy case on February 24, 2017. The final installment payment came due postpetition, on March 15, 2017.

When the Debtor failed to pay the $100,000 installment due on March 16, 2016, the Former Wife filed a motion for contempt (the "Contempt Motion") in the State Court Case. On November 14, 2016, following months of litigation over, and four amendments to, the Contempt Motion, the State Court reserved February 27, 2017 for a full-day evidentiary hearing (the "Contempt Hearing"). Transcript of Contempt Hearing ("Tr.") at 22:9-11, 30:7-13, 36:24-25 [DE #92 in 17-12235].

On February 24, 2017, just three days prior to the Contempt Hearing, the Debtor filed a *pro se* chapter 7 petition initiating the above-styled bankruptcy case. Debtor's state court counsel advised the state court judge ("Judge Sarduy") that the Debtor was in bankruptcy, but the Former Wife's attorney, misquoting the statute, convinced Judge Sarduy that the Contempt Motion was excepted from the automatic stay,[3] and the Contempt Hearing went forward.

---

[3] Counsel argued that collection of a DSO from property of a bankruptcy estate is not stayed by the filing of a bankruptcy petition. Tr. 25:13-22. The statute excepts from the automatic stay "the collection of a domestic support obligation from property that is <u>not</u> property of the estate." 11 U.S.C. § 362(b)(2) (emphasis added).

3

## The Contempt Hearing and Order

Judge Sarduy conducted a day-long evidentiary hearing. At the conclusion of the hearing, the Judge announced his ruling holding the Debtor in contempt. Tr. 102:5-6. The court heard testimony from the Debtor and his Former Wife. The Former Wife's testimony was not transcribed. Tr. 47:4-6. The Debtor's testimony, which was transcribed, was probative of his financial condition when the parties signed the MSA. Tr. 47:23-25, 48, 49:1-6, 60-65, 66:1-5, 72:10-13. During that testimony, the court took judicial notice of the Petition for Dissolution of Marriage, which contained a claim for alimony, Tr. 65:19-24, and received in evidence a financial affidavit that was signed by the Debtor and that described the Debtor's financial condition when he executed the MSA, Tr. 60:17-25. The Former Wife's counsel's closing argument also referenced the Debtor's finances at the time of the MSA. Tr. 98:22-25, 99:1-2.

Significantly, the Contempt Hearing included argument about whether the Divorce Obligation should be treated as equitable distribution or as alimony. Tr. 43:5-15, 44:18-25, 45:1-6, 63:19-25, 64, 65:1-24, 97:18-25, 98:1-8, 23-25, 99:1-4. Judge Sarduy described his job, in that regard, as interpreting the parties' intent at the time of the MSA by examination of extrinsic evidence.[4]

_____

[4] In discussing the import of a paragraph in the MSA providing for a third-party, Allison Weinger, Esq., to resolve ambiguities in

4

The state court had to make that determination because the contempt remedy was available under Florida law only if the Divorce Obligation was considered alimony.[5]

On March 13, 2017, Judge Sarduy entered an Order Granting Former Wife's Motion for Contempt [DE #74-2 in 17-12235] (the "Contempt Order"). The Contempt Order held the Debtor in Contempt and ordered him to pay the Former Wife $100,000.00, representing the full amount of the second to last installment payment due under the MSA. At the time, the final installment payment was not yet due. That payment is now past due.

In the Contempt Order, Judge Sarduy also made the following specific and important findings:

> [T]he MSA is not vague or ambiguous. The provision to pay $520,000.00 in installments constitutes alimony and not an equitable distribution. The MSA describes the payment as lump sum alimony and provides for enforcement by contempt. This was a nine year marriage in which the Former Husband was the breadwinner. Under such circumstances the Former Wife would be entitled to some form of alimony, yet the MSA makes no other provision for alimony.

### The Bankruptcy Case and Adversary Proceeding

After the Contempt Hearing, the Debtor's chapter 7 bankruptcy case was dismissed because the Debtor did not file his schedules.

---

the MSA, Judge Sarduy said "let's say that the provision is not there . . . . Then these nice folks come to me and they are asking me to interpret what they meant at that moment because we need to look at extrinsic evidence." Tr. 16:21-25.

[5] Farghali v. Farghali, 187 So. 3d 338, 340-41 (Fla. 4th DCA 2016).

The case was reinstated on March 21, 2017 and is now pending under Chapter 13 of the Bankruptcy Code. Judge Sarduy entered the Contempt Order when no bankruptcy stay was in effect, because he entered the order after dismissal, but before reinstatement, of the bankruptcy case.

On March 29, 2017, the Debtor filed a Motion for Enforcement of the Automatic Stay [DE #35 in 17-12235] seeking an order declaring the Contempt Order void because the Contempt Hearing was conducted during the pendency of the Debtor's chapter 7 case. The Court agreed and, on April 20, 2017, entered its Order Enforcing Automatic Stay (the "Stay Order") [DE #54 in 17-12235]. In the Stay Order, the Court declared void Judge Sarduy's Contempt Order and stayed the State Court Case. The Court noted that the Contempt Order was signed when no bankruptcy stay was in effect but found that the Contempt Hearing was in violation of the stay and, therefore, any order entered pursuant to that hearing was also in violation of the stay.

On June 13, 2017, the Former Wife moved to dismiss the chapter 13 case [DE #74 in 17-12235] and filed a motion asking the Court to reconsider the Stay Order or to abstain from determining whether the Divorce Obligation is a DSO [DE #73 in 17-12235]. The Court scheduled the Motion to Dismiss and the Motion to Reconsider or Abstain for hearing on July 25, 2017.

Before the July 25th hearing, on July 10, 2017, the Debtor filed his complaint initiating this adversary proceeding (the "DSO Adversary").   The Complaint seeks a judgment declaring that the Divorce Obligation is not a DSO and, as such, may be treated as an unsecured claim in the chapter 13 plan and discharged when the Debtor completes payments under his plan.

On August 2, 2017, the Court denied the Former Wife's Motion to Reconsider, and denied without prejudice the Former Wife's Motion to Dismiss [DE #95 in 17-12235].   The Court also denied the Former Wife's Motion to Abstain but without prejudice to the Former Wife filing a motion for abstention in the DSO Adversary.   In deferring ruling on abstention pending further briefing in the DSO Adversary, the Court noted the following:

> Judge Sarduy had to consider the nature of the $520,000 obligation in order to enter his Contempt Order, and the Contempt Order did include a specific finding that the $520,000 obligation was alimony, not an equitable distribution.   Nevertheless, the transcript did not include extensive argument on the issue and the Contempt Order itself is void under this Court's April 24th Order.

The Former Wife filed her Motion for Abstention in the DSO Adversary on August 18, 2017 [DE #9].[6]   The Court conducted a

---

[6] The Former Wife filed a proof of claim for $289,436.54 on August 25, 2017 [Claim 2-1 in 17-12235].   The claim consists of the undisputed $200,000.00 Divorce Obligation, plus an additional $68,333.00 that the Former Wife claims is unpaid from earlier installments, plus $21,103.21 in interest.   The claim asserts that the debt is a DSO entitled to priority treatment under § 507(a)(1). The Debtor filed his Objection to Claim on August 27, 2017 [DE #106 in 17-12235] contending that the Divorce Obligation is not a

hearing on the Motion for Abstention on October 10, 2017. The Court has reviewed the record in the main bankruptcy case and in the DSO Adversary, including the Motion for Abstention [DE #9], the Debtor's Response [DE #14] and the Former Wife's Reply [DE #16], has considered applicable case law including the cases cited in the Notices of Supplemental Authority filed by the Debtor [DE #17, 18] and the Former Wife [DE #19], has reviewed the MSA and the transcript of the Contempt Hearing, and has considered the arguments of counsel at the October 10th hearing in the DSO Adversary. The Court finds cause to abstain. The state court is the more appropriate court to determine whether the remaining $200,000.00 Divorce Obligation is a DSO.

## Discussion

Whether the Divorce Obligation is a DSO is an issue of federal law. However, the state court has concurrent jurisdiction to make the determination. *Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir. 2001). The narrow issue before the Court is which court should resolve the matter – the bankruptcy court or the state court – where, as here, the Debtor has moved for a bankruptcy court determination of the issue and the Former Wife has moved the bankruptcy court to abstain.

---

DSO. The decision on whether to abstain from adjudicating the DSO Adversary will also be a decision on abstaining from resolving the claim objection.

A bankruptcy court has broad discretion to abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Bankruptcy courts have identified a number of factors relevant to a court's inquiry on discretionary abstention in the family law context, *see, e.g., In re Tremaine*, 188 B.R. 380, 385 (Bankr. S.D. Ohio 1995), all of which are instructive as opposed to binding on this Court. Overlaying these considerations is the Eleventh Circuit's guidance that bankruptcy courts should not embroil themselves in family law matters. *Carver v. Carver*, 954 F.2d 1573, 1578–79 (11th Cir. 1992).

In holding that the bankruptcy court should have abstained from hearing a chapter 13 debtor's stay violation claim, the court in *Carver* stated:

> [i]t is appropriate for bankruptcy courts to avoid incursions into family law matters "out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."

*Carver* at 1579 (quoting *In re MacDonald*, 755 F.2d 715, 717–19 (9th Cir. 1985).

The Eleventh Circuit cautioned against the danger of bankruptcy courts second-guessing state courts in family law matters, which "could produce conflicting court decrees further aggravating an already delicate situation." *Carver* at 1579. *Carver*'s guidance was reaffirmed by the Eleventh Circuit in

9

*Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir. 2001). This strong policy favoring abstention in family law matters is unchanged today.[7]

The Court is by no means finding that the Eleventh Circuit's policy statements in *Carver* and *Cummings* require bankruptcy courts to abstain from hearing adversary complaints to determine whether marital obligations are DSOs. Absent a request to abstain, bankruptcy courts typically adjudicate DSO issues. However, when presented with a motion to abstain, this Court does view these Eleventh Circuit decisions as "encouragement" to abstain if, like here, the record shows that the state court has particular knowledge of relevant issues and, therefore, is the more appropriate court to make the decision.

The facts of this case strongly support abstention, most significantly the evidence presented at, and the findings arising from, the Contempt Hearing. In that hearing, the state court heard extensive argument by counsel for both parties, considered

---

[7] Mr. Zhuk's argument that *Akenbrandt v. Richards*, 504 U.S. 689 (1992) limits *Carver* is misplaced. In *Akenbrandt*, the Supreme Court held a federal court should exercise diversity jurisdiction in a suit "in which the former spouse sues another on behalf of children alleged to have been abused[,] [b]ecause the allegations in [the] complaint do not request the District Court to issue a divorce, alimony, or child custody decree." *Id.* at 706-07. The facts of that case are inapposite and the statutory grounds for federal jurisdiction are different. *See also* Defendant's Reply Memorandum in Further Support of Motion for Abstention [DE #16, pp. 3-5] (collecting cases and persuasively arguing that *Carver* continues to be binding law in the Eleventh Circuit).

exhibits relevant to the parties' finances and the nature of the Divorce Obligation, and heard testimony from both the Debtor and his Former Wife.  After the day-long hearing, the state court held the Debtor in contempt of court for failing to pay the overdue $100,000 installment of the Divorce Obligation.

As described earlier, the contempt finding is critical in this case because, under Florida family law, if a payment obligation in a marital dissolution case is treated as equitable distribution rather than alimony or support, the payment is not enforceable by contempt. Farghali v. Farghali, 187 So. 3d 338, 340-41 (Fla. 4th DCA 2016).  Debtor's counsel cited this law in support of his argument against a finding of contempt no less than five (5) times at the Contempt Hearing [Tr. 8:24-25, 9:1-24, 12:18-25, 13:1-2, 16:13-20, 44:20-25, 45:1-6, 97:18-25, 98:1-8].

Thus, to find the Debtor in contempt, the state court had to determine the nature of the Divorce Obligation and the parties' intent at the time of the MSA.  Even though Judge Sarduy's Contempt Order is void, the arguments and evidence presented at the Contempt Hearing, and the court's findings, both in the transcript of the Contempt Hearing and in the Contempt Order, are very relevant to the abstention issue.  In particular, Judge Sarduy expressly found that the Divorce Obligation is alimony and not equitable distribution after he considered, at minimum, the plain language of the MSA, the disparity in the parties' earning capacities, the

11

Debtor's educational background, and the benefits that each party would have received if marriage had continued, all of which are critical factors in DSO determinations under federal bankruptcy law.[8]

As noted at the beginning of this discussion, a DSO determination is an issue of federal law and is not identical to a finding that, under Florida state law, a payment obligation can be enforced by contempt proceedings because the payment is for alimony or support.[9] However, the analysis is similar,[10] and the

---

[8] *In re Fussell*, 303 B.R. 539, 545 (Bankr. S.D. Ga. 2003) ("The most critical factors to be considered in interpreting the parties' intent with respect to the provisions of a divorce settlement include: (1) any disparity in the parties' earning capacities; (2) parties' relative business or employment opportunities; (3) parties' physical condition; (4) parties' educational background; (5) parties' probable future financial needs; (6) benefits that each party would have received if marriage had continued" (citations omitted)); *see also Benson v. Benson* (*In re Benson*), 441 Fed. Appx. 650, 651 (11th Cir. 2011) (describing as factors "(1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes" (citation omitted)).

[9] *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 904-905 (11th Cir. 1985) ("[S]tate law does not determine whether a domestic obligation is dischargeable in bankruptcy."); *Cummings v. Cummings* at 1265 ("Whether a given debt is in the nature of support is an issue of federal law." (citation omitted)).

[10] *Harrell v. Sharp* at 906-907 (citing the legislative history of the Bankruptcy Code provision excepting DSOs from dischargeability for the proposition that "the process of determining whether an obligation was in the nature of support [is] similar to the determination of whether a payment is actually alimony or in

12

Court finds compelling and material the fact that Judge Sarduy spent an entire day conducting an evidentiary hearing on the Former Wife's Motion for Contempt.

The Debtor argues that the state court has no special knowledge of the facts relevant to the parties' intent because the Debtor's obligations were contained in a settlement agreement rather than ordered by the judge. *See Battaglia v. Battaglia* (*In re Battaglia*), 321 B.R. 67 (Bankr. M.D. Fla. 2005) (where divorce decree is based on a settlement, bankruptcy court can hear the testimony and determine the parties' intent); *In re Smith*, 263 B.R. 910, 918 n.8 (Bankr. M.D. Fla. 2001) (where obligation at issue arose from an agreement, the state court was in no better position than the bankruptcy court to determine the intent of the parties in creating the obligation).

This argument and these cases would be persuasive here if the state court had not conducted any hearings involving interpretation of the MSA. But that is not the case. As is clear from the transcript of the Contempt Hearing and the Contempt Order arising from that hearing, Judge Sarduy has already analyzed the

---

reality a property settlement"); *Cummings v. Cummings* at 1265 ("Although federal law controls, state law does provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." (internal quotations omitted)).

Divorce Obligations in the MSA and determined, under similar state law, that the Divorce Obligation should be treated as alimony.

In *Cummings v. Cummings*, cited earlier, the Eleventh Circuit reversed the bankruptcy court's determination that a state court divorce obligation was all intended to be equitable distribution and was dischargeable. Significantly, in remanding the proceeding, the court cited to *Carver* and invited the former spouse to seek stay relief to have the state court determine the issue. Although it did not order the bankruptcy court to abstain, the Eleventh Circuit suggested that "upon remand the bankruptcy court may choose to await clarification by the divorce court regarding what portion – if any – of the equitable distribution is in the nature of support." *Cummings*, 244 F.3d at 1267.

Another fact in the record influencing this Court's decision to abstain is the following provision in the MSA: "If the parties are unable to agree as to the meaning or intent of any part of this agreement, then these issues will be submitted to Allison Weinger, Esquire for her binding decision." [DE #9, Ex. "1," ¶ 32]. At the Contempt Hearing, Debtor's counsel argued that by including this provision in the MSA, the parties agreed to give Ms. Weinger exclusive authority to interpret the nature of outstanding payment obligations under the MSA. Counsel urged Judge Sarduy to refer this issue to Ms. Weinger rather than go forward with the Contempt Hearing.

14

Judge Sarduy ultimately ruled that the Contempt Hearing could proceed notwithstanding this arbitration-type clause in the MSA. However, Judge Sarduy's ruling was based primarily on waiver because the Contempt Hearing had been scheduled more than three months earlier, and the Debtor did not raise the issue until the day of the hearing, after litigating the contempt issue without protest.

Upon abstention, this matter will go back to Judge Sarduy to specifically determine whether the parties intended the Divorce Obligation to be in the nature of alimony or support when they executed the MSA.  In this procedural setting, Judge Sarduy may choose to consider *de novo* whether the intent of the parties should be determined by Allison Weinger as agreed to in the MSA.  This Court expresses no opinion on whether the "arbitration" provision in the MSA should or should not be enforced.  What is clear is that the issue of whether to enforce this provision in the MSA is purely a state law issue that the state court should decide.

An additional factor courts consider in deciding whether to abstain is whether the bankruptcy proceeding involves forum shopping.  That factor supports abstention here.  The Debtor had actively defended against the Former Wife's Motion for Contempt in State Court, which Motion was amended four times and heavily litigated.  The Contempt Hearing before Judge Sarduy had been scheduled since November 14, 2016.  The Debtor filed a skeletal

petition for relief under Chapter 7 of the Bankruptcy Code on February 24, 2017, only three days before the February 27th Contempt Hearing before Judge Sarduy.  The Debtor neglected to file schedules or any other papers in his Chapter 7 bankruptcy case, which was dismissed due to such filing deficiencies, and did not seek to reinstate his bankruptcy case or to convert his case from Chapter 7 to Chapter 13 until *after* Judge Sarduy ruled against him.  In addition, the DSO Adversary was not filed until a month after the Former Wife asked the Court to grant stay relief to allow her to request a DSO determination in the State Court Case.

The fact that the Debtor will not be prejudiced by abstention tips the scale further in the Former Wife's favor.  If Debtor's bankruptcy counsel is prepared to litigate the DSO issue here, he is equally qualified to litigate the identical issue in the State Court Case.  Moreover, if it takes longer to resolve the DSO issue in state court, the delay will benefit the Debtor, not the Former Wife.  Debtor's proposed chapter 13 plan [DE #109 in 17-12235] presumes that the Divorce Obligation will not be deemed a DSO and his monthly plan payments are only $400 per month.  The automatic stay remains in effect as to enforcement of the Divorce Obligation, so he remains protected, for now, from any further efforts by the Former Wife to hold him in contempt.

Finally, based upon the record, the Court has no hesitation in sending this matter back to the state court to exercise its

16

concurrent jurisdiction. The transcript of the Contempt Hearing shows that Judge Sarduy is patient and thoughtful and certainly capable of applying the federal law on what constitutes a DSO. This Court trusts that Judge Sarduy will address the issue of whether the Divorce Obligation is a DSO as an issue of federal law that he has not yet decided, and that he will give the Debtor a full and fair opportunity to present argument and evidence.

Therefore, it is –

**ORDERED** as follows:

1. The Motion for Abstention is granted.

2. The Former Wife is granted relief from stay to seek a ruling in the State Court Case on whether the Divorce Obligation is a DSO.

3. The Court also abstains from adjudicating the Debtor's Objection to the Former Wife's proof of claim in this case. The DSO determination by the state court will determine whether the Former Wife's claim is a priority claim or a general unsecured claim in this case.

4. This proceeding is dismissed without prejudice to the Debtor seeking a declaration in the State Court that the Divorce Obligation is a DSO.

###

Copies to:

Jordan E. Bublick
Counsel for the Plaintiff, Mark Zhuk
PO Box 545941
Miami, FL 33154

Clayton D. Hackney
Counsel for the Defendant, Alison Brooke Zhuk
Legon Fodiman, P.A.
1111 Brickell Avenue, #2150
Miami, FL 33131